UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WB STUDIO ENTERPRISES INC.,<br><br>                      Plaintiff,<br><br>  -against-<br><br>DAN SCHWARTZ CPA PC,<br><br>                      Defendant. | Civ. No.<br><br>**COMPLAINT** |

Plaintiff WB Studio Enterprises Inc. ("Warner Bros."), by and through its undersigned counsel, for its Complaint against Defendant Dan Schwartz CPA PC ("Schwartz"), alleges as follows:

**Nature of the Action**

1. This action arises out of the negligent and wrongful conduct of Schwartz, an accounting firm retained and entrusted by Warner Bros. to provide accounting services for Warner Bros.' subsidiary, Entertainment Merchandise NY, Inc. ("EMNY"), and to maintain and safeguard more than $1.3 million in funds belonging to Warner Bros. (the "WB Funds") and held in EMNY's savings account.

2. In direct contravention of the standard of care to which Schwartz is held as a member of the accounting community, and in material breach of the parties' agreement under which Schwartz agreed to provide services to Warner Bros. in exchange for a fee, Schwartz (i) failed to ensure that its network and/or email systems were sufficiently secure and protected against unauthorized access and hacking, which left Schwartz's emails – and therefore Warner Bros.' confidential business and financial information – vulnerable to unauthorized access and manipulation by a hacker; and (ii) negligently and wrongfully transferred and lost the WB Funds

{00086259}

to a hacker or hackers (the "Hacker") after failing to identify the Hacker's request for the WB Funds as fraudulent.

3. As a direct and proximate result of Schwartz's complained of conduct in breach of its duty of care owed to Warner Bros. and its obligations under the parties' agreement, Warner Bros. suffered extensive damages.

## The Parties

4. Plaintiff Warner Bros. is a foreign corporation organized and existing under the laws of the State of Delaware, with a principal place of business in Burbank, California. Warner Bros. is an entertainment company that, among other things, produces film and television programs and operates and maintains certain properties.

5. Upon information and belief, Defendant Schwartz is a professional corporation organized and existing under the laws of the State of New York with a principal place of business located in Nanuet, New York, within Rockland County. Upon further information and belief, Schwartz is owned and operated by Dan Schwartz, a certified public accountant, who utilizes his Schwartz corporation to provide accounting, financial, and tax preparation services to individuals and businesses.

## Jurisdiction and Venue

6. Subject matter jurisdiction is proper in this Court under 28 U.S.C. § 1332, because the parties are diverse in citizenship and the amount in controversy exceeds $75,000.

7. Venue is proper in this Court under 28 U.S.C. §1391.

**Background**

A.   **Warner Bros.' Acquisition of EMNY and Temporary Retention of Schwartz**

8.   In or around late 2018, Warner Bros. acquired Platform 9 ¾, which operates Wizarding World-themed retail establishments in the United Kingdom and the United States. As part of that acquisition, Warner Bros. also acquired EMNY, which ran the New York operations of Platform 9 ¾.

9.   Prior to the acquisition, Schwartz was EMNY's long-time accountant and handled EMNY's accounts payable, accounting and banking functions. Upon information and belief, in connection therewith, Schwartz had responsibility for, *inter alia*, administering EMNY's checking and savings bank accounts with JP Morgan Chase, paying EMNY's vendor invoices, and arranging the payment of EMNY's payroll and taxes.

10.   In or before February 2019, EMNY's savings account contained approximately $1.3 million. Upon and as a result of the acquisition, that savings account and the $1.3 million contained therein became the property of Warner Bros. – *i.e.*, the WB Funds.

11.   Following Warner Bros.' acquisition of EMNY, Warner Bros. began the process of integrating the operations of Platform 9 ¾ and EMNY into the larger Warner Bros. company. As part of this effort, Warner Bros. intended to eventually take over all of EMNY's accounting functions and to transfer the WB Funds from the EMNY bank account to a Warner Bros.-controlled bank account.

12.   Because Warner Bros. could not integrate EMNY's accounting functions and transfer the WB Funds immediately, Warner Bros. and Schwartz verbally agreed that Schwartz would continue to handle EMNY's accounts payable and accounting functions and would temporarily maintain control over and safeguard EMNY's bank accounts. In exchange for

Schwartz's commitment to provide these services, Warner Bros. agreed to pay Schwartz a fee of $2,000 per month.

13. The parties expected that Schwartz's retention would be temporary and less than one year.

14. Warner Bros. paid Schwartz a total of $2,000 in fees.

**C. Schwartz's Vulnerable Network and/or Email System**

15. By virtue of Schwartz's accounting and financial advisory work, it was necessarily entrusted with sensitive and confidential business and financial information belonging to its clients, including Warner Bros.

16. Because Warner Bros. had only recently acquired Platform 9 ¾ and EMNY, and Schwartz had long provided accounting services to EMNY, Warner Bros. entrusted Schwartz not only with sensitive and confidential business and financial information, but also to fully carry out EMNY's financial and accounting functions and to safeguard the WB Funds.

17. Upon information and belief, it was Schwartz's regular practice to communicate with clients, including Warner Bros., via email, and to receive and send confidential client information via email.

18. Notwithstanding this practice and unbeknownst to Warner Bros., Schwartz did not ensure that its computer network and/or email system was sufficiently secure and protected against unauthorized access and hacking. Upon information and belief, Schwartz negligently failed to ensure that sufficient security measures were in place to protect against unauthorized access to Schwartz's network and/or email systems and, therefore, to sensitive and confidential business and financial information belonging to Schwartz's clients, including Warner Bros.

19. Upon information and belief, as a result of Schwartz's negligent and insufficient network and/or email security, in or around February 2019, Schwartz's network and/or email system was infiltrated by the "Hacker" using an IP address located outside the United States.

20. Upon information and belief, any security alerts received by Schwartz in connection with the Hacker's infiltration of Schwartz's network and/or email system were ignored by Schwartz.

21. As a result of Schwartz's negligent and insufficient network and/or email security, the Hacker was able to monitor Schwartz's emails and to access Schwartz's clients' confidential business and financial information. Moreover, Schwartz's insufficient security allowed the Hacker to intercept and manipulate confidential client communications and information, including communications with and information related to Warner Bros.

**D. The Intercepted and Manipulated Requests To Transfer The WB Funds**

22. Consistent with the parties' expectation that Schwartz's retention would be temporary, in or around January 2019, Warner Bros. notified Schwartz that it was preparing to transfer the WB Funds to a Warner Bros.-controlled bank account and that he should await transfer instructions.

23. Schwartz agreed to transfer the WB Funds to Warner Bros.' account with Bank of America.

24. Warner Bros., unaware of Schwartz's lax network and/or email security, communicated with Schwartz by email and sent sensitive and confidential information to Schwartz via email, including its authorization and request for Schwartz to transfer the WB Funds.

25. On February 19, 2019, at 12:42 p.m., a Warner Bros. employee sent an email from her Warner Bros. email address to Dan Schwartz's email account, to provide him with authorization and instructions to transfer the WB Funds to Warner Bros.' Bank of America bank account (the "WB Request").

26. The email stated in part: "Hi Dan, Please see attached authorization letter to transfer [EMNY's] savings account balance to Warner Bros. bank account (information attached)." The email attached a letter from the same employee and addressed to Dan Schwartz, which stated in pertinent part, "Please consider this letter as your authorization to transfer the current balance of the above company's savings account at JP Morgan Chase Bank to the following account. . . . [,]" and provided confidential account information for Warner Bros.' Bank of America bank account. The letter directed Schwartz to carry out the transfer on February 21, 2019, after receiving further confirmation.

27. Due to Schwartz's lax email and/or network security, the Hacker intercepted the legitimate WB Request and replaced it with a fraudulent request to transfer the WB Funds to an account unaffiliated with Warner Bros. that, upon information and belief, belonged to the Hacker.

28. Having intercepted the legitimate request from Warner Bros., the Hacker sent a fraudulent request to Schwartz to supersede it. At 3:01 p.m. (EST) on February 19, 2019, the Hacker sent an email to Schwartz from an email account that was intended to mimic – but in fact misspelled – the email address of a Warner Bros. employee. In that email, the Hacker requested that Schwartz transfer the WB Funds from EMNY's savings account to a Wells Fargo account on February 21, 2019 (the "Hacker Request"). The Hacker claimed that the Wells Fargo bank account belonged to Warner Bros. but in fact, it did not.

29. Upon information and belief, Schwartz negligently failed to notice that the Hacker Request came from a misspelled email address, which should have alerted Schwartz to the fact that the request was not legitimate.

30. Upon information and belief, Schwartz took no steps to confirm that the Wells Fargo account referenced in the Hacker Request belonged to Warner Bros., even though a previous conversation between Schwartz and Warner Bros. had discussed a Bank of America account, *not* a Wells Fargo account.

31. Upon further information and belief, Schwartz took no steps to confirm that the Hacker Request was legitimate, even though it was sent from a misspelled email address and directed the transfer of the WB Funds to a Wells Fargo account, instead of to Bank of America account, as had been previously discussed.

32. On February 21, 2019, Schwartz, while acting as WB's accounting firm and without attempting to confirm the legitimacy of the Hacker Request, which would have revealed its fraudulent nature, negligently wired the WB Funds to the Wells Fargo account, which did not belong to Warner Bros. and, upon information and belief, belonged to the Hacker.

33. On or about February 8, 2019, the Hacker sent a fraudulent email to Schwartz containing an altered version of a legitimate invoice from a long-time EMNY vendor ("Second Hacker Request").  The file extension of the attachment containing the invoice was unusual in that it had multiple periods that preceded the file extension (as opposed to the typical convention of a single period).  The altered version also contained payment instructions that directed Schwartz to change the payment instructions for the vendor at a bank account at Lloyds Bank, as opposed to the long-time vendor's actual bank account at Barclay's Bank.

34. On February 21, 2019, Schwartz, while acting as Warner Bros.' accounting firm and without attempting to confirm the legitimacy of the Second Hacker Request, which would have revealed its fraudulent nature, negligently wired funds from Warner Bros.' account to the Hacker's Barclay's Bank account, which did not belong to Warner Bros. and, upon information and belief, belonged to the Hacker.

35. On February 25, 2019, Schwartz, while acting as Warner Bros.' accounting firm and without attempting to confirm the legitimacy of the Second Hacker Request, which would have revealed its fraudulent nature, negligently wired additional funds from Warner Bros.' account to the Hacker's Barclay's Bank account, which did not belong to Warner Bros. and, upon information and belief, belonged to the Hacker.

36. As a direct result of the foregoing conduct by Schwartz, the Hacker came into possession of the WB Funds and, despite its efforts, Warner Bros. has not been able to recover all of the WB Funds or to identify the Hacker.

37. As a direct result of the foregoing conduct by Schwartz, Warner Bros. has suffered significant monetary losses, including at a minimum, the approximately $1.3 million of funds belonging to Warner Bros. that was transferred by Schwartz to the Hacker, plus consequential damages and pre- and post-judgment interest as allowable under the law.

**FIRST CAUSE OF ACTION**
**(ACCOUNTING MALPRACTICE)**

38. Plaintiff repeats and realleges each and every allegation contained in the Complaint with the same force and effect as if set forth herein.

39. Warner Bros. retained Schwartz to carry out EMNY's accounting functions and to maintain and safeguard EMNY's bank account and the WB Funds until such could be transferred to a Warner Bros.-controlled account.

40.     Schwartz had a duty to Warner Bros. to exercise the degree of care, skill, and diligence commonly possessed by a member of the accounting community in connection with its retention by and work for Warner Bros., including to ensure that Warner Bros.' sensitive and confidential business and financial information was secure from unauthorized access while in Schwartz's possession and to maintain and safeguard the WB Funds.

41.     Schwartz departed from the accepted standards of practice and breached the aforementioned duty owed to Warner Bros. by failing to ensure that its email and/or network systems were sufficiently safeguarded against unauthorized access and hacking; by leaving Warner Bros.' sensitive and confidential business and financial information in Schwartz's possession vulnerable to unauthorized access and manipulation; by failing to take any steps to confirm the legitimacy of the Hacker Request, despite various red flags and even though doing so would have revealed the fraudulent nature of the Hacker Request; and by instead negligently transferring the WB Funds to the Wells Fargo account which, upon information and belief, belonged to the Hacker.

42.     As a direct and proximate cause of Schwartz's breach of the aforementioned duty of care, Warner Bros. suffered damages in the amount of at least $1.3 million, plus pre- and post-judgment interest allowable under the law.

**SECOND CAUSE OF ACTION**
**(BREACH OF CONTRACT)**

43.     Plaintiff repeats and realleges each and every allegation contained in the Complaint with the same force and effect as if set forth herein.

44.     On or after January 1, 2019, Warner Bros. and Schwartz entered into a valid and enforceable verbal agreement under which Schwartz agreed, in exchange for a fee, to perform EMNY's accounting functions and to safeguard and maintain EMNY's bank accounts and the

WB Funds until such time as such functions and funds could be fully transitioned and transferred to Warner Bros.

45. The parties expected that Schwartz's performance under the verbal agreement would be completed within a few months and, in any event, in less than one year.

46. Warner Bros. has performed all obligations required of it under the verbal agreement with Schwartz. Warner Bros. paid a total of $2,000 in fees to Schwartz for services provided.

47. Warner Bros. reasonably expected that, in exchange for the fees paid to Schwartz, Schwartz would carry out EMNY's accounting functions and would maintain and safeguard EMNY's bank accounts and the WB Funds.

48. Notwithstanding the express terms of the parties' verbal agreement and Warner Bros.' payment to Schwartz of agreed upon fees, Schwartz failed to maintain and safeguard the WB Funds. Instead, in material breach of the parties' verbal agreement, Schwartz transferred the WB Funds to an account that did not belong to Warner Bros. and, upon information and belief, belonged to the Hacker.

49. As a direct, proximate and legal result of Schwartz's breach, Warner Bros. has suffered damages in an amount to be determined at trial, plus consequential damages, attorneys' fees, and pre- and post-judgment interest to the extent permitted by law, as well as restitution of the fees paid to Schwartz.

50. Consequential damages were reasonably contemplated by Warner Bros. and Schwartz at the time they entered into the verbal agreement.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Warner Bros. demands judgment as follows:

A.    For damages in the amount to be determined at trial;

B.    For restitution of the fees paid to Schwartz by Warner Bros.;

C.    Pre- and post-judgment interest in an amount to be determined at trial;

D.    An award of reasonable attorneys' fees, costs and disbursements in an amount to be determined at trial; and

E.    Such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure Plaintiff hereby demands a trial by jury.

Dated:    February 25, 2020
           White Plains, New York

YANKWITT LLP

By: _____
Russell M. Yankwitt
Alicia A. Tallbe
140 Grand Street, Suite 705
White Plains, New York 10601
Tel: (914) 686-1500
Fax: (914) 487-5000
russell@yankwitt.com
alicia@yankwitt.com
*Attorneys for Plaintiff*
